# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAELLA CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASCENA RETAIL GROUP, INC., DAVID R. JAFFE and ROBERT GIAMMATTEO,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

{00331684;2 }

Plaintiff Michaella Corporation ("Plaintiff") alleges the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Ascena Retail Group, Inc. ("Ascena" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all purchasers of Ascena securities between September 16, 2015 and June 8, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Defendant Ascena is a leading national specialty retailer of apparel for women and tween girls.  Ascena operates its business in four operating segments:  Premium Fashion, Value Fashion, Plus Fashion, and Kids Fashion.

3.      On May 18, 2015, Ascena issued a press release announcing that it had entered into a definitive merger agreement with ANN Inc. ("ANN"), pursuant to which Ascena will acquire ANN for a combination of cash and stock (the "ANN Acquisition").  ANN is the parent company of Ann Taylor and LOFT and as of January 31, 2015, operated 1,030 Ann Taylor, Ann Taylor Factory, LOFT Outlet, and other stores in forty-seven states, the District of Columbia, Puerto Rico, and Canada.  Defendant David R. Jaffe ("Jaffe"), then Chief Executive Officer ("CEO"), President and Chairman of the Board of Ascena, commented on the announcement, stating in pertinent part as follows:

> This powerful transaction joins two strong and highly complementary organizations and management teams and dramatically reinforces our leadership position in women's specialty apparel retailing. We are excited to further leverage

our uniquely capable operating platform and exceptional combined talent to drive immediate, significant and ongoing value for our stockholders. With the addition of the Ann Taylor and LOFT brands, ascena will become one of North America's largest and most diversified specialty apparel retailers, with a tremendous set of opportunities to continue to expand its leadership position in the women's apparel market.

4.    On August 21, 2015, Ascena issued a press release announcing that it completed the ANN Acquisition. Defendant Jaffe commented on the announcement, stating in pertinent part as follows:

This powerful merger joins two strong and highly complementary organizations, and dramatically reinforces our leadership position in women's specialty apparel retailing. The acquisition positions ascena as the third largest specialty apparel retailer and the single largest focused on women's apparel, with a diverse brand portfolio that serves women of all ages, sizes and demographics.

We expect to leverage ascena's state-of-the-art distribution and fulfillment centers and its shared services capabilities to rapidly and comprehensively integrate the ANN INC. brands, and drive significant value to our stockholders. We have identified $150 million in annualized run rate synergies resulting from this transaction that we expect to capture by the end of the third year post-closing.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ANN Acquisition was a complete disaster for the Company as ANN's operations were in far worse condition than had been represented to the public; (ii) to mask the true condition of ANN, Defendants improperly delayed recognizing an impairment charge to the value of ANN's goodwill and, as a result, Ascena's reported income and assets were materially overstated and the Company's financial results were not prepared in conformity with Generally Accepted Accounting Principles ("GAAP"); (iii) many of the brands acquired in the ANN Acquisition were in steep decline and were also materially overvalued on Ascena's Class Period financial

statements; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.    On September 19, 2016, Ascena filed a Form 10-K for the fiscal year ended July 30, 2016 with the SEC.  The Form 10-K reported goodwill related to ANN in the amount of $733.9 million, a reduction of $225.7 million.

7.    Upon the revelation that the ANN Acquisition was experiencing significant problems, Ascena's stock price fell $2.43 per share, or 29.93%, to close at $5.69 per share on September 20, 2016.

8.    On May 17, 2017, Ascena issued a press release revising its third quarter and full year fiscal 2017 sales and earnings outlook, advising investors that "[t]he specialty retail sector is in a period of unprecedented secular change that is disruptive to traditional business models, and we believe operating conditions in our sector are likely to remain challenging for the next 12 to 24 months."  Ascena further noted that the Company would be taking an impairment charge, but failed to quantify the amount.

9.    On this news, Ascena's stock price fell $0.76 per share, or 26.95%, to close at $2.06 per share on May 18, 2017.

10.    Then, on June 8, 2017, Ascena issued a press release detailing its third quarter financial results.  The Company reported a GAAP loss of $5.29 per diluted share compared to net earnings of $0.08 per diluted share for the same period in the prior year.  The press release further stated:  "[T]he loss in the current quarter includes a non-cash pre-tax impairment charge of $1.324 billion (after tax impact of $5.22 per diluted share) to write-down a portion of the Company's goodwill and other intangible assets."

11.     During the twenty-two days between when the Company's announcement of its intention to take the impairment charge and after it announced the amount of the impairment, the price of Ascena stock fell another 35.46%, or $1.00 per share, before it closed on June 8, 2017 at $1.82 per share.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

15.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  Ascena maintains its headquarters in this District and many of the acts and conduct that constitute the violations of the laws complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.

16.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

17.     Plaintiff purchased Ascena securities during the Class Period as set forth in the attached certification, incorporated by reference herein, and has been damaged thereby.

18.     Defendant Ascena is a leading national specialty retailer of apparel for women and tween girls.  Ascena stock trades under the ticker "ASNA" on the NASDAQ, an efficient market.  Ascena is a Delaware corporation with its principal place of business at 933 MacArthur Boulevard, Mahwah, New Jersey.

19.     Defendant Jaffe was Ascena's CEO, President and Chairman of the Board at all relevant times.  He retired from his position as CEO and Chairman of the Board on May 1, 2019. He remains a member of the Board of Directors.

20.     Defendant Robert Giammatteo ("Giammatteo") was Ascena's Chief Financial Officer ("CFO") and Executive Vice President ("EVP") at all relevant times.

21.     Defendants Jaffe and Giammatteo are referred to herein as the "Individual Defendants."  Ascena and the Individual Defendants are referred to herein, collectively, as the "Defendants."

22.     Defendants are liable for:  (i) making materially false statements; or (ii) failing to disclose material adverse facts known to them about Ascena.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Ascena securities was a success, as it:  (i) deceived the investing public regarding Ascena's prospects and business; (ii) artificially inflated the price of Ascena securities; and (iii) caused Plaintiff and other members of the Class to purchase Ascena securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    Defendant Ascena is a leading national specialty retailer of apparel for women and tween girls.  Ascena operates its business in four operating segments:  Premium Fashion, Value Fashion, Plus Fashion and Kids Fashion.

24.    On May 18, 2015, Ascena issued a press release announcing that it had entered into a definitive merger agreement with ANN, under which Ascena will acquire ANN for a combination of cash and stock.  ANN is the parent company of Ann Taylor and LOFT and as of January 31, 2015, operated 1,030 Ann Taylor, Ann Taylor Factory, LOFT Outlet and other stores in forty-seven states, the District of Columbia, Puerto Rico, and Canada.  Defendant Jaffe commented on the announcement, stating in pertinent part as follows:

> This powerful transaction joins two strong and highly complementary organizations and management teams and dramatically reinforces our leadership position in women's specialty apparel retailing. We are excited to further leverage our uniquely capable operating platform and exceptional combined talent to drive immediate, significant and ongoing value for our stockholders. With the addition of the Ann Taylor and LOFT brands, ascena will become one of North America's largest and most diversified specialty apparel retailers, with a tremendous set of opportunities to continue to expand its leadership position in the women's apparel market.

25.    On August 21, 2015, Ascena issued a press release announcing that it completed the ANN Acquisition.  Defendant Jaffe commented on the announcement stating in pertinent part as follows:

> This powerful merger joins two strong and highly complementary organizations, and dramatically reinforces our leadership position in women's specialty apparel retailing. The acquisition positions ascena as the third largest specialty apparel retailer and the single largest focused on women's apparel, with a diverse brand portfolio that serves women of all ages, sizes and demographics.
>
> We expect to leverage ascena's state-of-the-art distribution and fulfillment centers and its shared services capabilities to rapidly and comprehensively integrate the ANN INC. brands, and drive significant value to our stockholders. We have

identified $150 million in annualized run rate synergies resulting from this transaction that we expect to capture by the end of the third year post-closing.

26.    Unbeknownst to investors, by the start of the Class Period, the ANN Acquisition was a complete disaster for the Company as ANN's operations were in far worse condition than had been represented to the public.  To mask the true condition of ANN, Defendants improperly delayed recognizing an impairment charge to the value of ANN's goodwill and, as a result, Ascena's reported income and assets were materially overstated and the Company's financial results were not prepared in conformity with GAAP.  Additionally, many of the brands acquired in the ANN Acquisition were in steep decline and were also materially overvalued on Ascena's Class Period financial statements.  Throughout the Class Period, Defendants made statements that failed to disclose and misrepresented the adverse facts detailed herein.

**Materially False and Misleading Statements Issued During the Class Period**

27.    The Class Period commences on September 16, 2015.  On that date, Ascena issued a press release announcing its financial results for its fiscal fourth quarter and full year ended July 25, 2015.  Defendant Jaffe commented on the results, stating in pertinent part as follows:

> We are executing against controllable factors, mindful that traffic continues to be challenging. Our brands remain focused on strong merchandising execution, and disciplined inventory and expense management. We are making good progress toward the multi-year development of our enterprise omni-channel platform, which is a key element of our long-term growth plan. And with the acquisition of ANN INC., our shared services group is aggressively working to capture the $150 million of identified deal synergies. We feel very good about the unique and scalable model we are creating, and ***believe we are positioned well for the long term***. (Emphasis added).

28.    On December 1, 2015, Ascena issued a press release announcing its financial results for its fiscal first quarter, the period ending October 24, 2015.  For the quarter, the Company reported a net loss of $0.10 per diluted share compared to net income of $0.32 per

diluted share in the same period of fiscal 2015.  According to the press release, the decrease was primarily due to the effect of purchase accounting adjustments and transaction costs related to the ANN Acquisition, and adjusted earnings for the first quarter of fiscal 2016 were $0.36 per diluted share compared to $0.33 per diluted share in the first quarter of fiscal 2015.  Defendant Jaffe commented on the results, stating in pertinent part as follows:

> On the operating front, we were pleased with first quarter earnings, which exceeded our expectations. We saw strong sales performance at maurices and Lane Bryant, and significant gross margin rate recovery at Justice, Ann Taylor and LOFT. We continue to execute well against controllable factors, and believe we have compelling product and the appropriate level and mix of inventory to maximize our holiday opportunity.

> Specific to the Black Friday / Cyber Monday period, we saw mixed performance across our portfolio. Importantly, we were very pleased with performance at Justice, which significantly exceeded our expectations during this critical peak period, delivering strong positive comp performance despite a reduced level of promotional activity.

> As we discussed in detail at our investor day last month, the initial phase of our integration of ANN INC. is progressing well, along with each of the synergy work-streams. We are increasingly confident that the Justice turnaround is gaining traction, and we're excited about the continuing improvement of Lane Bryant fundamentals, along with the sustained strength of maurices performance. While Dressbarn had another challenging quarter, we continue to work to build the foundation for future growth.

29.     That same day, Ascena filed a Form 10-Q with the SEC for the quarter ended October 24, 2015, which was signed by the Individual Defendants.  The Form 10-Q described the ANN Acquisition, stating in pertinent part as follows:

> On August 21, 2015, the Company acquired 100% of the outstanding common stock of ANN for an aggregate purchase price of approximately $2.1 billion. The purchase price consisted of approximately $1.75 billion in cash and the issuance of 31.2 million shares of the Company's common stock valued at approximately $345 million, based on the Company's stock price on the date of the acquisition. The cash portion of the purchase price was funded with borrowings under a $1.8 billion seven-year, variable-rate term loan described in Note 10. The acquisition is intended to diversify our portfolio of brands that serve the needs of women of different ages, sizes and demographics.

In the Form 10-Q, for the ANN Acquisition, Ascena attributed $953.2 million to goodwill and

$815 million to trade names.  With respect to the financial statements contained therein, the

Form 10-Q represented the following:

> These interim condensed consolidated financial statements have been prepared
> pursuant to the rules and regulations of the Securities and Exchange Commission
> (the "SEC") and are unaudited. In the opinion of management, however, such
> condensed consolidated financial statements contain all normal and recurring
> adjustments necessary to present fairly the condensed consolidated financial
> condition, results of operations, comprehensive (loss) income and cash flows of
> the Company for the interim periods presented. In addition, certain information
> and footnote disclosures normally included in financial statements prepared in
> accordance with the accounting principles generally accepted in the U.S. ("US
> GAAP") have been condensed or omitted from this report as is permitted by the
> SEC's rules and regulations. However, the Company believes that the disclosures
> herein are adequate to ensure that the information is fairly presented.

30.    On March 1, 2016, Ascena filed a Form 10-Q for the period January 23, 2016,

with the SEC, which was signed by the Individual Defendants. With respect to the goodwill

attributed to the ANN Acquisition, the Form 10-Q stated in pertinent part as follows:

> The allocation of the purchase price to the assets acquired and liabilities assumed,
> including the amount allocated to goodwill, is subject to change within the
> measurement period (up to one year from the acquisition date) as additional
> information that existed at the date of the acquisition related to the values of
> assets acquired and liabilities assumed is obtained. During the second quarter of
> Fiscal 2016, the Company recorded measurement-period adjustments which were
> not material to the condensed consolidated financial statements, as more fully
> described in the table below. The Company is currently in the process of
> finalizing the allocation of the purchase price to the assets acquired and liabilities
> assumed and does not expect any changes to be material.

The Form 10-Q stated that for the period from the date of acquisition through January 23, 2016,

Ascena reduced the goodwill attributed to the ANN Acquisition by $4.9 million to $948.3

million.  Concerning the financial statements contained therein, the Form 10-Q represented the

following:

These interim condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission (the "SEC") and are unaudited. In the opinion of management, however, such condensed consolidated financial statements contain all normal and recurring adjustments necessary to present fairly the condensed consolidated financial condition, results of operations, comprehensive (loss) income and cash flows of the Company for the interim periods presented. In addition, certain information and footnote disclosures normally included in financial statements prepared in accordance with the accounting principles generally accepted in the U.S. ("US GAAP") have been condensed or omitted from this report as is permitted by the SEC's rules and regulations. However, the Company believes that the disclosures herein are adequate to ensure that the information is fairly presented.

31.     That same day, Ascena held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call, Defendants spoke positively about the ANN Acquisition.  In response to a question regarding ANN and Loft, Defendant Jaffe stated in pertinent part as follows:

The businesses are performing very well. We think the upside, forgetting all the synergies, all their cost savings, which we're on track on both counts, which is significant, we also see these businesses continuing to grow and perform at a higher level of productivity. So, very optimistic about how these businesses are trending and the potential for their continued growth.

*      *      *

What we've seen is that we've got strength across all of our brands, some more than others. We have all these levers, not just on the top-line but through synergies, through a lot of the programs that we're running to cut costs, et cetera, that are going to enable us to hit our numbers, and while there may be a little bit of softness in one brand, invariably, we've been able to make it up if not more in other areas.

32.     On March 23, 2016, Ascena made a presentation at the Telsey Advisory Group Consumer Conference.  During the presentation, Defendant Giammatteo stated, "Ann Taylor and the Ann brands have done very, very well from a gross margin rate standpoint, so making progress there and, again, ***continuing to expect that growth forward***" (emphasis added).

Defendant Giammatteo also positively spoke about the ANN Acquisition, stating in pertinent part as follows:

> So last October, we laid out the long-term fiscal 2018 goal for the Company to be at $1 billion in EBITDA. And so I'll yet again reaffirm this year that we expect to deliver $0.75 to $0.80, which would translate to $670 million to $700 million in EBITDA. So, quick math, we have a $300 million gap to bridge there.
>
> As I think about the $300 million, roughly 2/3 of it is what I would classify as self-help, so things that we own, such as you called it before the ANN deal synergies, the ANN stand-alone cost savings that they've been committed to before Ascena acquired them, and things like gross margin rate accretion across many of our brands. And so thinking about that, we've got $235 million that we've committed specifically to deal synergies and the cost savings at Ann. And those initiatives are all tracking at or ahead our expectations. We have a high degree of visibility for the major supply chain initiatives which kick in in earnest in fiscal 2017 and fiscal 2018.

33.    On May 31, 2016, Ascena issued a press release announcing its earnings for the third fiscal quarter, the period ending April 23, 2016.  For the quarter, the Company reported earnings of $0.08 per diluted share compared to $0.15 per diluted share in the same period in fiscal 2015.  Defendant Jaffe commented on the results, stating in pertinent part as follows:

> At the same time, the environment this Spring has been challenging. After the disruption of a warm holiday season, we've had to contend with an unseasonably cold spring and resulting elevated traffic headwinds. While I think we have managed the business well, particularly with respect to inventory levels, we were not able to fully mitigate these challenges. Our earnings exceeded the upper end of our guidance range for the third quarter, but I'll note that performance benefited from some favorable expense timing that offset softer than expected top-line performance. These expenses will come back in the fourth quarter, and combined with the traffic challenges we've seen continue through May, we've adjusted our earnings outlook downward.

34.    That same day, Ascena held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call Defendant Jaffe positively described the ANN Acquisition, stating in pertinent part as follows:

> Our integration of ANN is progressing well, and we remain confident in our $235 million target for deal synergies and cost savings by the end of FY18. ***I'm***

***especially pleased with the product-driven strength we have seen at LOFT, which was a bright spot in the quarter.*** (Emphasis added).

35.     During the conference call, Defendant Giammatteo stated the Company was still on track to achieve its goal of $1 billion EBITDA by fiscal year 2018. In response to an analyst's question about whether reaching this goal was "still in the cards," Defendant Giammatteo stated in pertinent part as follows:

So Susan, in terms of the performance, you asked about how we're looking at the forward year. April and May looked a lot like each other. So in terms of like how we're looking at the full year, we saw a very strong -- deep trough April that continued into May until we got to Memorial Day when things have come back in line with expectations. Really we're expecting again return to what we've seen before where traffic is in that negative low to mid single-digit period for the fourth quarter where our brands, frankly, can navigate that with improved conversion and improved average dollar sale.

From a longer-term basis, we still believe in that $1 billion figure in FY18 that we talked about. Certainly, this spring has been a bit challenged. But again, you've got two-thirds of that path to the $1 billion, things that are fully under our control. So things like -- that we've talked about before in terms of the synergies that remain in track. I'm sure we'll probably get some discussion on that in this call. Big component there, and we still feel good about that outlook. So certainly some headwinds here, but longer term, again, two-thirds of that path to the $1 are things that are within our control. Again, we need to see the comps a bit stronger than we have here, but certainly we still think that $1 billion is in play.

36.     During the conference call, Defendant Jaffe spoke positively about the ANN Acquisition. The following exchange took place:

Analyst:

[I]t's been a year since you've announced the ANN acquisition. Wanted to get your take, what's really outperformed expectations thus far, what's performed to plan, and then where do you see the most opportunity for improvement? Presumably, it's the Ann Taylor division. Just curious to get your take there. Thanks very much.

Defendant Jaffe:

***Loft has really had a very, very strong season, very pleased with what they're doing. So I would say they're above our expectation. ANN is pretty much in line***

*with our expectation*, as is the ability to generate the synergies and the cost savings that we've been talking about for about a year now. That's coming in, as Robb said, pretty much right on plan. ***So I'd agree with your comment that ANN is the area that we see the most upside for.*** (Emphasis added).

37.     On May 31, 2016, Ascena filed a Form 10-Q with the SEC for the quarter ending April 23, 2016, which was signed by the Individual Defendants.   In the Form 10-Q, the assessment on goodwill relating to ANN as of April 23, 2016, was $948.2 million, a decrease from the prior quarter of $0.1 million, and a total decrease of $5 million from the acquisition date.  With respect to the financial statements contained therein, the Form 10-Q represented the following:

> These interim condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission (the "SEC") and are unaudited. In the opinion of management, however, such condensed consolidated financial statements contain all normal and recurring adjustments necessary to present fairly the condensed consolidated financial condition, results of operations, comprehensive (loss) income and cash flows of the Company for the interim periods presented. In addition, certain information and footnote disclosures normally included in financial statements prepared in accordance with the accounting principles generally accepted in the U.S. ("US GAAP") have been condensed or omitted from this report as is permitted by the SEC's rules and regulations. However, the Company believes that the disclosures herein are adequate to ensure that the information is fairly presented.

38.     On June 15, 2016, Ascena presented at the Piper Jaffray Consumer Conference. During the presentation, Defendant Jaffe spoke positively about the ANN Acquisition, stating in pertinent part as follows:

> With this ANN acquisition, it tells about your cost savings, your synergies. It tells us how faster you are going to pay back all the stuff that you've got. So we're a little bit -- our model, our stock has got a little more hair on it. But I think it's kind of fun of peel back the layers to understand the nuances of it, because I really do think over time, we have more levers and it's obviously on us to be able to execute and produce, but ***we have more opportunities to be successful because of all the things I have mentioned; the strength of our brands, our backlog, our shared service model, the investments we're making***. (Emphasis added).

Defendant Giammatteo further stated in pertinent part as follows:

> [W]e feel very good about the synergies, ***the ANN acquisition is going along wonderfully***. I couldn't imagine it being any better both from an execution and relationship side. So going really well there and I think there is a lot of things that we haven't yet cracked yet in terms of like the sourcing strategy that we have different models there, there is probably more opportunity there. (Emphasis added).

39.     The statements referenced in ¶¶ 27-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ANN Acquisition was a complete disaster for the Company as ANN's operations were in far worse condition than had been represented to the public; (ii) to mask the true condition of ANN, Defendants improperly delayed recognizing an impairment charge to the value of ANN's goodwill and, as a result, Ascena's reported income and assets were materially overstated and the Company's financial results were not prepared in conformity with GAAP; (iii) many of the brands acquired in the ANN Acquisition were in steep decline and were also materially overvalued on Ascena's Class Period financial statements; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

40.     On September 19, 2016, Ascena issued a press release announcing its financial results for the year ending July 30, 2016.  Defendant Jaffe commented on the results stating, in pertinent part, as follows:

> Fiscal 2016 was a challenging year for Ascena characterized by a highly competitive selling environment and significant store traffic headwinds. While we are seeing good customer demand during peak periods, off-peak demand has been inconsistent, and fourth quarter financial performance fell well below our expectations.

*        *        *

Aside from the challenging business trend we've seen, *I'd like to highlight progress in four key areas of our business that I believe lay the foundation for stronger future performance*. First, we were pleased by the Justice turnaround. The Justice team delivered full-year operating margin in the middle of the guidance range we provided last September. *Second, our integration of ANN continues to progress well, and we remain ahead of plan with our synergy and cost savings workstreams.* Third, the new ascena omni-channel platform went live at Justice in the fourth quarter, and the early reads on demand growth have significantly exceeded our expectations. And finally, we continue to make progress with our enterprise transformation work, and we are currently moving forward to address identified opportunities. (Emphasis added).

41.     On September 19, 2016, Ascena filed a Form 10-K for the year ended July 30, 2016 with the SEC which was signed by the Individual Defendants, among others.  The Form 10-K reported goodwill as it relates to ANN as of July 30, 2016, in the amount of $733.9 million, a reduction of $225.7 million.  According to the Form 10-K, Ascena assigned this amount to other reporting units after they completed "an analysis of the expected synergies."  The Form 10-K stated in pertinent part as follows:  "The Company allocated $225.7 million of the goodwill related to the ANN Acquisition to the Company's other reporting units where the anticipated benefits of the acquisition are expected to be achieved."

42.     With respect to goodwill, the Form 10-K stated in pertinent part as follows:

The allocation of goodwill was based on specific identification or other reasonable allocation methodologies for expected cost savings related to procurement, fulfillment, distribution and shared services. The amount of goodwill assigned to a reporting unit represents the difference between the fair value of that reporting unit before and after the acquisition using a with-and-without analysis that measures the fair values of the expected synergies under the income approach.

*       *       *

As discussed in Note 3, the Company performs its annual impairment assessment of goodwill and indefinite-lived intangible assets during the fourth quarter of each fiscal year. The impairment test for other indefinite-lived intangible assets consists of a comparison of the fair value of the intangible asset with its carrying value. If the carrying value of the indefinite-lived intangible asset exceeds its fair

value, an impairment loss is recognized equal to the excess. ***Based on the results of the Company's annual impairment testing of goodwill and indefinite-lived intangible assets for Fiscal 2016, no impairment charges were deemed necessary.***

\*    \*    \*

The allocation of the purchase price to the assets acquired and liabilities assumed, including the amount allocated to goodwill, was subject to change within the measurement period (up to one year from the acquisition date) as additional information that existed at the date of the acquisition related to the values of assets acquired and liabilities assumed is obtained. During Fiscal 2016, the Company recorded certain measurement-period adjustments. While no material adjustments are expected, the purchase price allocation is not yet final as the Company is completing its analysis of the opening balances related to deferred taxes. The allocation will be finalized during the first quarter of Fiscal 2017. (Emphasis added).

43.    That same day, Ascena held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants reduced earnings guidance for the Company and made other statements about the condition of the Company's business.

44.    On this news, which indicated that the ANN Acquisition was experiencing problems, Ascena's stock price fell $2.43 per share, or 29.93%, to close at $5.69 per share on September 20, 2016, on extremely heavy trading volume. Defendants, however, continued to conceal the full extent of the issues with ANN and did not write-down the value of ANN on Ascena's financial statements.

45.    On December 1, 2016, Ascena filed a Form 10-Q with the SEC for the quarter ended October 29, 2016, which was signed by the Individual Defendants. With respect to the goodwill attributed to the ANN Acquisition, the Form 10-Q stated "[t]here were no measurement-period adjustments recorded during the first quarter of Fiscal 2017 and the allocation of the purchase price is final" and the final goodwill allocation as of October 29, 2016,

was $959.6 million and the final trade name allocation as of that date was $815 million.  The

Form 10-Q stated in pertinent part as follows:

> The impairment assessment of goodwill and other indefinite-lived intangible
> assets is performed at the level of each brand, which constitutes an individual
> reporting unit. During the fourth quarter of Fiscal 2016, the Company performed
> its annual impairment assessment (the "Fiscal 2016 Valuation"). As disclosed in
> our Fiscal 2016 10-K the Company had goodwill of $1,279.3 million, of which
> $733.9 million related to ANN, $169.4 million related to Justice, $126.0 million
> related to Lane Bryant, $200.7 million related to maurices and $49.3 million
> related to Catherines. While the results of that assessment indicated the fair values
> of Justice, maurices and Catherines all significantly exceeded their respective
> book values, the fair value of the Company's ANN and Lane Bryant reporting
> units exceeded their book value by less than 20% and are discussed in more detail
> below.
>
> In the Fiscal 2016 Valuation, the fair value of ANN exceeded its book value by
> 12% and the fair value of Lane Bryant exceeded its book value by 16%. For the
> three months ended October 29, 2016, both ANN and Lane Bryant have
> performed in line with the cash flow projections supporting the Fiscal 2016
> Valuation as the shortfall in operating cash flows was offset by a decrease in
> capital expenditures.

With respect to the financial statements contained therein, the Form 10-Q represented the

following:

> These interim condensed consolidated financial statements have been prepared
> pursuant to the rules and regulations of the Securities and Exchange Commission
> (the "SEC") and are unaudited. In the opinion of management, however, such
> condensed consolidated financial statements contain all normal and recurring
> adjustments necessary to present fairly the condensed consolidated financial
> condition, results of operations, comprehensive (loss) income and cash flows of
> the Company for the interim periods presented. In addition, certain information
> and footnote disclosures normally included in financial statements prepared in
> accordance with the accounting principles generally accepted in the U.S. ("US
> GAAP") have been condensed or omitted from this report as is permitted by the
> SEC's rules and regulations. However, the Company believes that the disclosures
> herein are adequate to ensure that the information is fairly presented.

46.     On January 18, 2017, Ascena held an investor day conference for analysts and

investors.  During the conference, Defendants talked about the changing retail apparel industry

environment and the pressure from Amazon and spoke positively about the Company's outlook

and then present business condition.  Defendant Jaffe stated in pertinent part:

> [We]'ve got a lot of features that I think make us a really great investment. We're the largest specialty retail, are focused on women and girls. We're got a really well-diversified portfolio, revenue base and real estate footprint. We've got a terrific shared service platform that we'll give you a little more detail on. And we've got a lot of levers that are going to mitigate what's happening in the world and consumer behavior, and I think we've got very strong cash flow liquidity.
>
> *       *       *
>
> So we believe that our platform is an enabler of true synergies and cost-savings. We think our model enables to plug and play an acquisition. We merged with ANN about a year and a half ago. We have been able to get all those synergies that we thought we could relatively easily. That was our fourth acquisition, and the platform is pretty well-established so we were able to execute on that very well. And so we see our platform as both a differentiator and a competitive advantage for our business.

Defendant Jaffe also provided an EBITDA outlook stating in pertinent part as follows:

> So back to our fiscal 2018 EBITDA outlook, with inclusion of the trend-based comp risk and the modest gross margin rate improvement we just discussed, we see a trend risk scenario of $580 million which represents low single digit growth from our current fiscal 2017 guide.

47.    On March 6, 2017, Ascena filed its Form 10-Q for the period ending January 28,

2017 with the SEC which was signed by the Individual Defendants.  The Form 10-Q stated that

"there were no measurement-period adjustments recorded during Fiscal 2017 and the allocation

of the purchase price was finalized at the end of the first quarter of Fiscal 2017."  Concerning the

financial statements contained therein, the Form 10-Q represented the following:

> These interim condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission (the "SEC") and are unaudited. In the opinion of management, however, such condensed consolidated financial statements contain all normal and recurring adjustments necessary to present fairly the condensed consolidated financial condition, results of operations, comprehensive (loss) income and cash flows of the Company for the interim periods presented. In addition, certain information and footnote disclosures normally included in financial statements prepared in

accordance with the accounting principles generally accepted in the U.S. ("US GAAP") have been condensed or omitted from this report as is permitted by the SEC's rules and regulations. However, the Company believes that the disclosures herein are adequate to ensure that the information is fairly presented.

48.     The statements referenced above in ¶¶ 45-47 were materially false and misleading for the reasons set forth in ¶ 39.

### The Truth Begins to Emerge

49.     On May 17, 2017, Ascena issued a press release revising its third quarter and full year fiscal 2017 sales and earnings outlook as follows:

| Period | Comparable Sales | Non-GAAP EPS* |
|---|---|---|
| Q3 FY17 | Down 8% | $0.04 - $0.06 |
| Full Year FY17 | Down 7% - Down 6% | $0.10 - $0.15 |

Defendant Jaffe stated in pertinent part, "[t]he specialty retail sector is in a period of unprecedented secular change that is disruptive to traditional business models, and we believe operating conditions in our sector are likely to remain challenging for the next 12 to 24 months." The press release also noted that the Company would be taking an impairment charge but failed to quantify the amount.  The press release stated in pertinent part as follows:

> The impact of the challenging retail environment, the decline in the Company's stock price, and the reduction in the Company's forecasted earnings represent impairment indicators which required the Company to test its goodwill and indefinite lived intangible assets for impairment during the third quarter. ***The Company is in the process of completing that analysis and expects to record a material non-cash impairment charge of its goodwill and intangible assets during the third quarter***; however, the amount of the charge is not able to be quantified at this time. (Emphasis added).

50.     On this news, Ascena's stock price fell $0.76 per share, or 26.95%, to close at $2.06 per share on May 18, 2017, on extremely heavy trading volume.

51.     Then, on June 8, 2017, Ascena issued a press release detailing its third quarter financial results.  The Company reported a GAAP loss of $5.29 per diluted share compared to

net earnings of $.08 per diluted share in the year-ago period. Further, comp sales were down 8% and non-GAAP EPS was $0.05. The press release further stated: *"[T]he loss in the current quarter includes a non-cash pre-tax impairment charge of $1.324 billion* (after tax impact of $5.22 per diluted share) to write-down a portion of the Company's goodwill and other intangible assets." (Emphasis added).

52. During the twenty-two days between when the Company's announcement of its intention to take the impairment charge and after it announced the amount of the impairment, the price of Ascena stock fell another 35.46%, or $1.00 per share, before it closed on June 8, 2017 at $1.82 per share.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ascena securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

54. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ascena securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ascena or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

56.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ascena;

- whether the Individual Defendants caused Ascena to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Ascena securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

59. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Ascena securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Ascena securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

62.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     During the Class Period, Defendants disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

        a)     employed devices, schemes, and artifices to defraud;

        b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

        c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Ascena securities during the Class Period.

66.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ascena securities.  Plaintiff and the Class would not have purchased Ascena securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

67.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Ascena securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

68.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69.    The Individual Defendants acted as controlling persons of Ascena within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of Ascena, and their ownership of Ascena stock, the Individual Defendants had the power and authority to cause Ascena to engage in the wrongful conduct complained of herein. Ascena controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and Ascena are liable pursuant to Section 20(a) of the Exchange Act.

70.    WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  July 2, 2019

Respectfully Submitted,

**POMERANTZ LLP**

*/s/ Jonathan D. Lindenfeld*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jlindenfeld@pomlaw.com
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*